Our first case this afternoon is 410-1034. People vs. Donald Green. The show for the appellant, Yasmin Ekin. Yes. Is that pronounced correctly? Yes, it is. Thank you. And for the appellee, Anastasia Brooks. Ms. Ekin, you may proceed. Thank you, Your Honor. May it please the Court, my name is Yasmin Ekin and I represent the appellant Donald Green. Mr. Green is appealing the denial of leave to file his pro se successive post-conviction petition. And in his petition, he raised a claim of actual innocence and a claim that his right to due process was violated under Brady v. Maryland. For purposes of this argument, I would like to focus on the Brady claim, but I would be happy to answer any questions about the actual innocence claim as well. For Donald Green to obtain leave to file his successive petition based on the Brady claim, he was required to show cause of prejudice. And for purposes of the Post-Conviction Act, cause is shown by identifying an objective factor that impeded him from raising this claim in an earlier proceeding. Prejudice is shown by demonstrating that the claim not raised previously so infected the trial that the resulting conviction or sentence violated due process. Now the cause and prejudice analysis under the Post-Conviction Hearing Act actually overlaps with the framework used to evaluate the merits of his Brady claim. Brady holds that the suppression of evidence favorable to the defendant violates due process where the evidence is material either to the defendant's guilt or innocence. And this includes the suppression of evidence affecting credibility. And under these same principles, due process is violated where the prosecution does not solicit false testimony but allows it to go uncorrected. Now under Brady, cause is established when the reason for the failure to develop facts in prior proceedings was the state's suppression of the evidence. And prejudice is demonstrated when the suppressed evidence is material, which means it could reasonably be taken to put the whole case in such a different light to undermine confidence in the verdict. And now to be clear, that is not a sufficiency of the evidence test. It's basically whether with the new evidence there is a reasonable probability of a different result. And in this case, Mr. Green's petition and the supporting documentation met both the cause and prejudice standard for obtainingly to file his petition and to warrant further proceedings on his Brady claims. The claims raised in Mr. Green's petition center around his allegation that the state knowingly used the false testimony of one of its key witnesses, Terry Buchanan. When Buchanan denied that his testimony against Green was made with the hopes of promises or leniency on the charges that Buchanan himself was facing. Those charges included non-probational offenses of armed robbery and residential burglary. And it was alleged that Buchanan unlawfully entered the home of Richard McLeod while armed with a gun, bound McLeod's hands and feet with electrical cord, took his car, a ring, and a check by threatening the use of force. These charges were the reason Buchanan was in jail at the same time as Green. At Green's trial, Buchanan testified that he was in the county jail when on April 8, 1988, Green was moved into his cell block. On April 11, Buchanan claimed that he heard Green say in his sleep that he didn't mean to do it. The next day, Buchanan supposedly confronted Mr. Green with these statements and he claimed that Mr. Green admitted to killing his daughter and sexually assaulting her with an ink pen. Mr. Buchanan gives the police this information the next day. Shortly afterwards, he's made a jail trustee, which includes the privileges of having visitors every day. He's released on April 19 after posting bond and his case has continued for almost a year and is still pending at the time of Green's trial. What part, just pausing right there, what part of what you just testified to wasn't brought out at trial? What part of? The factual scenario you just testified to, wasn't all of that elicited when Buchanan testified at trial? Yes. Okay. The fact that he was in. The whole, everything you just said. Right. Wasn't that all brought out at trial? It was. Okay. Yes, it was. Was Buchanan cross-examined about why he was testifying and what his hopes were regarding his testimony? Yes, he was. And he explained, I'm just doing it because I'm a good citizen. Yes, he did. Yes, he did. And how was that argued in closing argument by defense counsel? Well, it wasn't argued by defense, by the state it was used to bolster his credibility. Well, the defense counsel argued you would believe that, ladies and gentlemen, that this guy is sitting in the can and he's just a good citizen concerned about righting wrongs against the victims of criminals? Well, defense counsel may have raised that question in the juror's mind. May have, or did he? Didn't he argue Buchanan shouldn't be believed and Buchanan was obviously there in the hopes of testifying and gaining favor from the state? I'm sure he did argue that, although unfortunately he didn't have the evidence to support that argument. Okay, go ahead. Okay. Because during direct, when the state asked Buchanan, have I or anyone in the state's attorney's office ever made any deals or bargains or promises with you in order to have you testify, Buchanan said no. And the state persisted. Any deals by anyone, Terry, no. On cross-examination, defense counsel did try to bring out some evidence that would reveal that perhaps Mr. Buchanan did have hopes of some lenient treatment. And he asked, you hope that by testifying in this case that you will get a very favorable resolution of your case from the prosecution, isn't that correct? And he said no. On redirect, the state came back and said, you say you don't have any expectation of hope or leniency from the state, is that correct? And he said that's correct. And so then during their closing argument, the state basically argued that Terry Buchanan's testimony was very important because he said no deals or promises at all were given to him. And that Buchanan isn't getting anything. What reason does he have to say anything now? So clearly his denials were used to bolster his credibility. And these denials by Buchanan of any hopes or expectation of leniency are what are at issue here. Because the state used those denials to portray him as a very credible witness who they had no leverage over and therefore who had no motivation to testify falsely. Now this issue was brought up by trial counsel after Green's trial when he learned that a month after Green's trial, Buchanan pled guilty to actually reduced charge of burglary and a probation sentence. And Assistant State's Attorney Carol Walker, who was one of the lead prosecutors in Mr. Green's case, was the prosecutor who showed up at Buchanan's plea hearing. And she's the one who agreed to amend the charge. She's the one who agreed to dismiss the remaining charges against him. And she's the one who agreed to the negotiated sentence of probation for Mr. Buchanan. So at the hearing on Mr. Green's post-trial motion, trial counsel accused the state of withholding this evidence of an agreement and charged that the state had knowingly allowed Buchanan to perjure himself. But the state denied that there was any agreement and said that the victim was no longer, the victim who had been tied up with electrical cord and held up at gunpoint and whose car had been taken from him was no longer interested in pursuing the charges. And that was the true reason for the reduced charges against Buchanan. So the trial court ruled that based on the evidence before it, it could not conclude that the state had withheld information. Now in his first pro se post-conviction petition, Mr. Green primarily challenged his aggravated criminal sexual assault conviction, including that the evidence was insufficient for that conviction. Counsel was appointed to represent him and counsel included an allegation that upon information and belief, Terry Buchanan was planted in Mr. Green's cell to extract incriminating statements from him in violation of his due process rights. And he also alleged that it was ineffective assistance of counsel failing to investigate those facts. That again was dismissed as conclusory because there was no affidavit from Mr. Buchanan to support that claim. And it was affirmed on appeal. Now the second post-conviction petition, Mr. Green in his pro se petition alleged the state had allowed Mr. Buchanan to testify falsely at his trial. And here counsel is appointed and counsel retained the services of private investigator Bill Clutter. In an amended petition, counsel alleged that Green was denied due process and a fair trial when the prosecution improperly misled the jury concerning its dealings with Buchanan. But again, no affidavit or any other type of evidence was attached to support that petition. And in fact, that is what the state based their motion to dismiss the petition on and the circuit court agreed, dismissed it. And on appeal, this court found that upheld the dismissal of the petition based on the fact that Mr. Green had not shown cause of prejudice or purposes of filing a successive petition. So now we come to his third petition, which is the basis of this appeal. And Mr. Buchanan again makes the same allegation, the state knowingly presented the false testimony of Terry Buchanan. But this time he attaches new evidence and the new evidence is a memo of an interview with Buchanan that was actually prepared by the private investigator Bill Clutter. Green himself said that he was unaware of the memo that he had written to the circuit clerk's office asking for his trial file. Wasn't his attorney at the second petition, Jeff Page, aware of this? Wasn't this Clutter the guy he had hired to work for him? Yes, he was. And what are we supposed to make of the fact that it was in the possession of the defense? Indeed, it was not just the document in the possession of the defense, but it was a document, a memorandum, created by the defense agent, wasn't it? It was created by the defense agent, but there's... And then he sat on it and did nothing and... And there's no indication that Mr. Green knew about it. There's no indication... What about Mr. Page? He had it and he didn't use it. So how should this court deal with that? That, I would say, is unreasonable assistance of post-commissioned counsel because his failure to attach this memo contributed to the dismissal of Mr. Green's second petition. Because, once again, the court and the state were looking for some support from Mr. Buchanan to support this allegation that he had actually had expectations of leniency before he testified. And, in fact, the memo supports that. Because, in the memo, Mr. Buchanan said that before he testified, for the first time, he recalls having a discussion with prosecutors about getting a break in my case for testifying against Donald Green. And, after that fact, they did reduce my sentence. And he said he remembered Assistant State's Attorney, Carol Walker, telling him this... There's a difference. After the fact, not after that fact. Exactly. You're right. After the trial was over. They did reduce his sentence. What does the memo say about the promises he was made before that? It says that they had discussions about getting a break on his case. Would the memo be accurate if it described Carol Walker saying, yeah, I had discussions, I'm not going to talk to you about it, I'm not going to give you any break? Did they have discussions? Our position would be that that's not a reasonable interpretation of this memo. And it's not a reasonable interpretation of the memo. Well, what did it say about what Buchanan told Clutter he expected? He said that, you mean the following sentence of, I wasn't really expecting a break? He said, I did not expect a break in this case. This is years later, apparently, and why wouldn't that then be a reasonable interpretation of what Carol Walker told him? Because then... Is he still lying about it? Well, then he says that his attorney told him he would likely receive probation anyway since it was his first offense. The only entity... But the issue, though, is what was he promised or what was he suggested by the prosecutor in exchange for his testimony? And according to the defense attorney's own memo, the witness says he didn't expect a break in the case. And that sentence is followed with his statement that his attorney told him he would receive probation anyway. The only entity that could reduce his non-probational offenses to probation and offer him probation is the state. So we should disregard his statement that he didn't expect a break on the case? Well, there's a case very similar to that in People v. Nino where, again, the witness testifies that he hoped to get a break, but he didn't expect to get a break. So it's unreasonable of attorney Jeff Page to view this as anything other than helpful to the defense claims? Yes, I think it is unreasonable. I think in light of all the other evidence they've tried, if you view the memo in the context of what happened during the trial proceedings, with Buchanan's case being continued to coincide with Green's case for well over a year, with him receiving the reduced sentence from the same... My question was, would it be unreasonable for Page to view this memo as not being particularly supportive of his position that Buchanan was lying? Yes, it would be unreasonable. How long after the trial was this conversation between Clutter and Buchanan? It was in 2003. How much longer was that? From 1989. Fourteen years? Is there any suggestion, or do you want to offer one now, why Buchanan would still be lying about this? I don't think so. So if you were Mr. Page presenting this argument to the trial judge and saying, disregard the part where Buchanan says, I didn't expect to get a break in this case, and the judge says, is he still lying about that? Or why should we disregard it? What would you say? I would say, yeah, the other evidence and the other statements in his memo, that one line does not... Two lines. The next one says, I really wasn't expecting it, said Buchanan. That was the second one. That was the quote, as opposed to the paraphrase. But all the other facts in that memo indicate that there were pre-trial discussions about getting a break in the case. But that goes back to my other question. How about the discussions were, no. Did discussions occur? Well, yes, they did. What was the result of them? No. But when he says the result of them was no, his next line shows that... That would explain why he wasn't really expecting it, wouldn't it? His next line, that he was likely to receive probation? He said he didn't expect to get a break in the case. Why would that be? Because he had discussions that he was told no. But where would he get the... I guess I'm... Where would he get this expectation or this understanding that he would likely receive probation? Where would that come from? His lawyer said. This is his first offense. He'd probably receive probation. I don't know. This is Seguin County, after all, I guess. First time armed robbers without records get their charge knocked down to robbery routinely. Is that the case? I don't know. I think that's looking far outside the contents of this memo in the context of all the other facts that happened at trial. I think you have to look at the context of the memo. It's also troubling the fact that the defense is the one who created this document and then withheld it. And now the claim is, see, look at the bad thing the state did. The state never saw this document, apparently. This is a defense document. But the state at all times has tried to disabuse Mr. Green and his defense attorneys that there was any deal at any time. When this was brought up, it was brought up in a post-trial motion. How many bites should a defendant get? If we agree with you, we're going to establish the idea that if you have good stuff, good stuff in support of your argument, hold on to it. See if you're going to be able to win this petition or get your hearing on this one. And if it's turned down, you can always use it the next time and say, oh, I got this document. My own lawyer, the previous one, he did a bad job. He decided not to use. I want to use it now. Is that the precedent we'd be establishing? The precedent we'd be establishing is that Mr. Page should have used this the time before. We wouldn't be here now. We would have proceeded further on this case at that point. That's the argument. And is it Mr. Green's fault that the state has consistently denied that there were any types of dealings or given him that impression? It's not for him to – he is allowed to rely on the state's representations. Why Mr. Green thought that this shouldn't be attached, we'll never know. But this supports – Mr. Page. I'm sorry, excuse me. Mr. Page. But it does support the allegation that there were pretrial dealings with Mr. Buchanan. I see my – This impeaches Buchanan from your perspective. Yes, Your Honor. Buchanan doesn't look like a very good witness to begin with. I mean, in terms of character and how the jury is going to view him. So how does additional impeachment, if we accept for the moment that the defense did tell the jury, don't believe this guy, he's a jailhouse snitch. So some additional impeachment of him. How does that go to actual innocence? I mean, all it does is discredit a witness that the defense attempted to discredit and perhaps did so. I don't imagine most jurors particularly relish the opportunity to rely upon the testimony of witnesses of this sort. They're looking at the other evidence as well. I think, Your Honor, that goes to absolutely the prejudice of both the Brady claim and also if I can explain it in terms of the context of actual innocence. In the context of the Brady claim, this new evidence was material, and particularly as to the criminal sexual assault charge. Because when interviewed by the police, at all times, Mr. Green, they said vehemently and adamantly denied committing the offense. And the medical experts for the state and the defense disagreed on whether the physical evidence proved that the injury to the victim was a result of a sexual assault. So purer Buchanan's testimony, even with this other evidence of him being basically a jailhouse informant, it still was the only evidence that connected Mr. Green,  And so certainly the state thought that his testimony was crucial to the state. And that is why they used those denials of lenient treatment to bolster his credibility. They needed him. And I do think that if the jury found, based on Buchanan's testimony, that Mr. Green committed the act of sexual assault, that would have also had a bearing on finding the requisite intent for first-degree murder, because there was an instruction for involuntary manslaughter. Ms. Ekin, your time's up. But before you leave, I want to ask you, you had originally raised in your brief that the gist standard applies to secular successive petitions. Since then, and since we set this case for all arguments, we've had the Supreme Court in Edwards. Sure. It appears to be that Edwards says, nah, that's not the standard. Do you agree? I do agree. I do agree. I wanted to give you a chance to address that. Oh, sure. They do say, I mean, obviously Edwards talks about a colorful claim of actual innocence, which is an exception to cause and prejudice. So, yes, I mean, that is the standard now for the actual innocence claim. It no longer does it state a gist. Right. And when you look at the Rice decision, though, which deals with cause and prejudice  whatever that standard is, and as I put in my brief, that's going to be determined in People v. Evans, if you can meet that standard, then you do go back to the second stage of post-conviction proceedings for addressing the merits of the claim. Thank you, Counsel. Thank you. Ms. Brooks. Thank you, Your Honors. May it please the Court. Counsel. My name is Anastasia Brooks, and I represent the People in this case. First of all, I'd like to respond to the point about Edwards and the colorable actual innocence standard claim. And that is actually defined in Edwards as being, quote, more likely than not that no reasonable juror would have convicted him in the light of the new evidence. And without meeting that standard, then as a matter of law, the defendant does not have a colorable claim of actual innocence. That's for Edwards, paragraphs 33 and 41, because I didn't have a chance to brief that at the time. And so with respect to Edwards, there is no colorable claim, because it's all getting to later with the Brady materiality standard, which is a reasonable probability of a different result had this allegedly suppressed evidence been disclosed. This is not a case where there was, for example, like in some of the cases recited in the defendant's brief, where there was a disinterested eyewitness who came forward at a later date and provided key testimony. This was only at most impeaching, and it's not the kind of evidence that Edwards. Are you contending it's essentially cumulative? Well, it's not exactly cumulative in the sense that it is, the more powerful way to put it is that it wasn't so conclusive that it would have led to a different result. Or to a different result on a retrial is more of the element that's missing here. So if you're Mr. Page, and you've been appointed to represent Mr. Green in a post-conviction petition, why aren't you going to attach the clutter memo to your petition in support of it? Well, it's damaging in the sense that the witness admitted to the defense, Buchanan admitted to the defense investigator that he did not have an expectation of leniency when he testified, which is the exact opposite of the point that the defense was trying to establish, in the sense that about a month later after he testified, Buchanan got a favorable plea deal from the prosecution. What about Ms. Ekin's point that it impeaches Buchanan on whether they had discussions or not? He uses the words discussion with, but it doesn't seem like there's any reference to what the state's attorneys, the prosecutors had to say about his attempts to seek leniency. It's not a situation like the defense language in the defense brief says that the state was negotiating with the defendant, or the state was talking to the defendant about offering him leniency for his testimony. It's a situation where if the state had done that, it seems that Buchanan would have accepted that. So if Buchanan then goes into trial without any expectation of leniency, then the only reasonable interpretation is that no leniency was offered. There was in fact no deal. Ms. Birx, maybe it's because of my background, but I'm particularly unsympathetic to problems about state discovery. I think the state ought to essentially have an open file policy, and I'm concerned, and maybe you can disclose my concerns, if we were to affirm in this case, would that be creating some sort of disincentive for the state to be totally forthcoming with regard to, for instance, dealing with jailhouse snitches? Well, no, Your Honor, because the law is clear that the state does not have a constitutional duty to disclose something like this unless it becomes material for purposes of Brady, and there is always the risk then that if the prosecutors do not disclose everything that could conceivably be Brady material, that there would then be at some point... Probably got a guy who's charged with first degree murder and aggravated criminal sexual assault in connection with the death of his six-month-old daughter. The stakes are pretty high, and in fact, let me get somebody for 50 years in prison. It seems to me that the message to the prosecutors ought to be pretty clear too, which is there shouldn't be any room for doubt about any of this stuff, and if you've got a jailhouse snitch, we ought to have the matters occurring with regard to your conversations with him and any expectations and all that to the level that would satisfy Justice Brennan. I don't know that we've reached that point here, and that's my concern. Well, the point is that the prosecutors do run a risk that eventually something that was not disclosed could become, in a cumulative sense, material for Brady purposes, and then the constitutional duty to disclose kicks in, and then the trial would violate due process. That is a risk that nondisclosure presents. That doesn't mean that any time something that would be useful to the defense is not disclosed, then automatically becomes required to have been disclosed as a matter of constitutional law. The point is, there is a risk, and if prosecutors choose to take those risks, then they might eventually be faced with reversals in a case where the nondisclosure was, in fact, of a material favorable fact to the defense. What do you think the record at this point shows with regard to conversations that may have occurred between prosecutors in the Sandman County State's Attorney's Office and Mr. Buchanan? Well, there's nothing that disputes what the prosecutors have said after trial, which is that the reason why they offered the plea agreement was because they had an unprovocative witness. So the defense has nothing to rebut that explanation, and the fact that at most what they have here is a statement by a witness that he had sought leniency, not that he had an actual expectation, either when he initially informed on the defendant with police or when he gave his trial testimony. At both of those times, if Buchanan did not have an expectation of leniency at those key moments, then there's nothing really impeaching except for the fact that at some point Buchanan had sought some leniency. But the defense used the claim here that the prosecutors were claiming that they had no leverage over Buchanan. It's not really the case of leverage. The questions were put to him is, did you have a deal or a promise? Do you recall, does the record show, who Buchanan's lawyer was at his trial? I'm not sure. Has there been any effort made to get any representations from Buchanan's lawyer as to the circumstances surrounding his guilty plea and that armed robbery case? I don't recall any. There had been a reference to, I think in the post-trial proceeding, there was a claim by the prosecutor saying, well, if you don't believe us, call the defendant's lawyer to testify as to what discussions there might have been. The post-trial motion? I think that was after the post-trial motion, if my memory serves me well, that there had been a claim by the prosecutors, well, if you don't believe us, bring in your old trial lawyer to testify as to what went on, because it's not a situation where a witness under charge like Buchanan would have been having uncounseled contact with prosecutors in negotiation over disposition of those charges. It doesn't seem like that's something that would have happened, would have been irregular. Do you recall whether there was a response made to that invitation by Mr. Green's trial counsel about bringing Kavanaugh or bringing Buchanan's lawyer? I don't remember, Your Honor, what exactly was responded to that, but there still is nothing, even at this point in the record, there is still nothing to rebut the explanation given by the prosecutors, nothing to connect the eventual plea agreement with the defense claiming here that they had pretrial dealings, as it gets into the Nino case, where there is, in fact, in Nino, evidence of actual preliminary discussions and an understanding that they were going to talk later, and then the very next day after the witness testifies he gets a plea agreement. This is not that case, this is different, because it wasn't the next day, it was a month, and that's not even dispositive. The fact is there was no evidence here of actual preliminary discussions, of a given take or understanding, even if it had simply just been a request, a simple request for what will this do for me by Buchanan, and the prosecutors are unwilling to make deals. Even just the making of that simple request, even if that should have been disclosed, it's still not material for Brady, because of the strength of the evidence is one major reason. Here that actual confession, the defendant was really upset, and had shaken the baby super hard, that's his own description of what he did, and the medical evidence of the bilateral retinal hemorrhaging, and other medical expert testimony that confirms the baby, in fact it died of, one of the major contributing causes of the baby's death was in fact the shaken baby syndrome and related injury. And although the defense, with respect to the sex assault, the defense did have an expert opinion for what it was worth, that what he termed scrapes in the baby's genital area had been caused, the explanation he offered was Candida albicans, which is a form of yeast infection. But however, that was overwhelmingly rebutted by the other evidence, because there was no other evidence of Candida albicans infection, and Dr. Donahue, the defense witness, was not a specialist in infectious diseases. And the actual specialist in infectious diseases was Dr. Chaudhary, and for the prosecution, he didn't see any white patches of Candida that went along with this evidence of the injury. Dr. Nichols-Johnson also said that she would expect other evidence if the baby in fact had Candida, and there was no other Candida, and it's not seen just in the vaginal tract of young babies like this. So that was not an actual explanation. Dr. Strano then said only direct trauma could have caused this type of injury. So the physical evidence of an actual traumatic injury to the vaginal area was strongly corroborative of the claim by Buchanan that the defendants confessed to him in jail as having penetrated her with an ink pen, and the evidence also says, yes, this type of injury would be consistent with having been caused by an ink pen. So for those reasons, the simple fact that at one point, Buchanan had sought some sort of, asked about some sort of break in his own case, was not going to create a reasonable probability of a different result. So therefore, there's no prejudice under the cause of prejudice test, and therefore, the defendant cannot even get leave to file that particular claim. Section 122-1F does refer to claims, not just petitions, and it's a codification of the cause of prejudice test, which under Pitts and Barger referred to a claim by claim analysis. So the state's position is there is no valid actual innocence claim here presented, but even then, that would not excuse the defendant from demonstrating both cause and prejudice. Now, my understanding is that the trial court dismissed this successive petition as frivolous. However, it shouldn't even have gotten to the first stage, dismissal stage of proceedings, because it wasn't actually filed with leave of court. The defendant never moved for leave, and the trial court never actually granted it, apart from simply dismissing it summarily as frivolous. So for those reasons, the defendant's request for second stage proceedings of post-conviction should not be granted, unless he, in fact, satisfies the cause and prejudice test and simple, colorable claim of cause and prejudice. There is no first stage preliminary pre-cause and prejudice review for pro se defendants. This is actually in the statute. There was a case that treated pro se defendants differently in this context of successive petitions, but the statute 122-1F actually doesn't include any sort of preliminary review or preliminary gist-type showing that the defendant has to make of cause and prejudice. So for those reasons, there was no... The trial court should not have considered this filed, and therefore the appellee can ask this court to affirm on any grounds. And so without a cause and prejudice showing on a valid actual innocence claim, this should never have been filed, and this court can affirm under de novo review, can affirm on that basis of having... Should not have been filed in the first place. The other petitions... The other issues I'd like to close on with the petition is there is an issue as to whether this is a freestanding claim. The state cited the Collier case, which also talks about impeaching evidence as well as not being actual innocence. But because the same evidence is being relied upon for a Brady claim, it's not really freestanding. And also, the defendant hasn't really remedied the problems with the second petition. The state's motion to dismiss said they don't have an affidavit from Buchanan. They still don't have an affidavit from Buchanan. And they're trying to meet the record requirements to support their petition without an affidavit from even the defendant about the merits for Buchanan. And also, the defendant hasn't shown why res judicata should not support the dismissal. Even if he can leave the file, should have been granted, and it gets to the summary dismissal stage, then this court can even affirm the summary dismissal on res judicata grounds because this was the exact same argument for being raised on the dismissal of the second post-conviction petition, and the defendant hasn't met his burden to show why res judicata shouldn't bar this third petition as well. And for those reasons, I thank you for your time and request this court to affirm. Thank you, counsel. The second? Your Honors, I think it's important to remember at this stage that whatever the standard is for evaluating the cause of prejudice at this point, it's a pleading standard. I mean, we still are at a preliminary review standard. So when you look at the other cases, like Nemo, McKinney, Perkins, that I cite in my brief, those are cases that have gone to a hearing where there's evidence produced as to that specific allegation. Now, why didn't defense counsel at the post-trial motion ask for Mr. Buchanan's attorney to appear? He doesn't have to. Under the United States Supreme Court precedent, it's not a game a prosecutor can hide, defendant must seek. That's not tenable with our principles of due process. When the prosecutor says, even though this victim was held up at gunpoint, his car was stolen from him, he decided he's just not interested in pursuing this case, Mr. Green and counsel, they can take that representation and believe it. They're supposed to be able to believe that representation. Well, what I'm suggesting is they're not, he's not believing it anymore. He's challenging it. Where have we heard from Mr. Buchanan's counsel? Why don't we, on the question of supporting documentation for this petition, where is that guy's story? Why didn't whoever he was. I don't think at this stage, at this pleading stage, that's required. He has shown enough, if you look at the cases, including a case from this court, People v. Potter, it is enough that the circumstances plus this memo are such that you can make a reasonable inference that there was an unspoken understanding between the state and Mr. Buchanan that he was going to receive lenient treatment for his testimony. And I do think the danger is giving the prosecution the message that, hey, as long as you kind of lie low, we'll just continue your case. Don't, let's not mention that we talked about getting a break. Let's not talk about the fact that your attorney thinks you're going to get probation and really we're the only ones that can give it to you. Let's not talk about that. Let's just wait until after his trial. Get the conviction. Then we'll give you your plea. And then we can all, you know, plausible denial. And say, no, you don't. And we can use your denials of any hope or that there wasn't a formal contract or a formal deal. We can use that to bolster you because basically you're a jailhouse informant that shouldn't really have much credibility. But this is how we can give you credibility. So, yeah, I think that is a huge danger. I think that that is the message that will be sent. And basically all that's being asked here is to move Mr. Green has made, has shown cause and prejudice for failing to raise this in an earlier proceeding. He has shown cause and prejudice for purposes of a Brady claim. And all that's being asked is that we move it to second stage proceedings so that we can get affidavits from the attorney with the assistance of it now that we have this memo showing that these pretrial dealings occurred. This is the first time we have that evidence. Okay. Thank you, counsel. Thank you. Thank you. We'll stand on the basis of recess for a few moments.